United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 28, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————————

No. 05-10903

———————————————

KURT BETZEL,
Plaintiff-Appellant,

versus

STATE FARM LLOYDS,
Defendant-Appellee.

———————————————

Appeal from the United States District Court
For the Northern District of Texas, Fort Worth

———————————————

Before HIGGINBOTHAM, DENNIS and CLEMENT, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

This is a dispute controlled by Texas law between a homeowner and his insured over coverage for a mold-damage claim. Kurt Betzel appeals from a district court order excluding his late-designated expert witnesses and from a district court order granting State Farm's motion for summary judgment. We reverse and remand.

**I**

A

Kurt Betzel bought his home in Arlington, Texas in 1991 and insured it with State Farm. In December 2001, Betzel notified State Farm that mold was growing on the sheet rock near his leaking

A/C registers. State Farm opened a claim and sent Michael King, an insurance adjuster, to inspect Betzel's home. King confirmed the A/C leak and found another in the kitchen, for which he opened a second claim. King found mold in several places and noted in the State Farm Activity Log, "We have confirmed that we have a covered loss." Six months later, State Farm opened a third and fourth claim, one for a shower-drain leak and another for a sewer leak. The first two claims were for losses that occurred while an HO-B policy was in effect. The third and fourth claims were for losses occurring under an HO-162A policy.

Kurt Betzel hired Blackmon Mooring, a company recommended by State Farm, to do the remediation work. After three months of work, and after three failed environmental-clearance tests, Betzel fired Blackmon Mooring. He then hired Paul Frantz, one of his late-designated experts, to finish the job. The house passed its clearance test on December 30, 2002.

With remediation finally complete, Betzel hired Jan Matlock, the original builder, to rebuild the house. Matlock is Betzel's other late-designated expert. State Farm estimated the cost to rebuild Betzel's house at $23,419.45. Matlock's estimate of $145,000.00 was much higher — and that was before *more mold* was discovered.

So Betzel brought Paul Frantz back in, several times, during the re-build to remove the "hidden mold" that Matlock had discovered. Because of these unforeseen problems and because of an

2

increase in the cost of materials, Matlock's estimate jumped to $212,260.92. State Farm had already paid more than $160,000 to Betzel for remediation, living expenses, and repair. Betzel estimated that another $132,000 would be necessary to finish the work. He hired a lawyer, who sent State Farm a letter, demanding $275,000 as full and final satisfaction of Betzel's claims. On November 17, 2003, a State Farm claims representative responded by denying further coverage and explaining that "the payments issued are appropriate and sufficient for the necessary remediation and rebuild of Mr. Betzel's home with regard to covered losses."

B

Betzel sued State Farm in Tarrant County District Court for breach of the insurance contract, breach of the duty of good faith and fair dealing, and violation of articles 21.21 and 21.55 of the Texas Insurance Code. State Farm removed based on diversity.

On September 28, 2004, the federal district court entered a scheduling order which provided:

> Each party shall designate experts by filing a written designation including the name, address, and telephone number of each expert who may be called to testify and make the disclosures required by Fed. R. Civ. P. 26(a)(2) by serving the required written reports at least 120 days before the pretrial conference date. . . . Strict compliance with the terms of this Order . . . is required.

The pretrial conference was originally set for July 5, 2005; Betzel's designation deadline was therefore March 6, 2005. Nearly three months after that deadline, on May 23, 2005, Betzel filed a

3

motion, opposed by State Farm, styled "Plaintiff's Motion To Allow Opinion Testimony From Certain Witnesses." Betzel's motion sought to elicit expert testimony from Matlock and Frantz. This motion came three weeks after State Farm filed its motion for summary judgment; one week after the deadline to file *Daubert* motions; three days after State Farm had deposed Matlock (as a fact witness); and immediately after State Farm had deposed Frantz (also as a fact witness).

The district court denied the plaintiff's motion on June 10, 2005. Five days later, the district court granted State Farm's motion for summary judgment, ruling that Betzel had marshaled no evidence to support his contractual claim, because "[t]he only summary judgment evidence plaintiff points to in support of his breach of contract claims is the deposition testimony of his general contractor, Mrs. Matlock, that 'in her opinion it would cost $212,260 to rebuild the home.'" The district court accordingly found no triable issue of fact on the question of cost to repair, since "this court has already ruled that plaintiff may not elicit expert testimony as a result of his failure to comply with the court's [scheduling order]."

Betzel appeals from the district court's order excluding his experts and from the district court's order granting summary judgment to State Farm.[1]

## II

We hold that the district court abused its discretion in excluding Betzel's late-designated witnesses.[2] We review such exercises of discretion by considering four factors: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice."[3]

### A

The first factor plainly favors State Farm. Indeed, Betzel concedes that he offered no explanation to the district court for

---

[1] Betzel has withdrawn his claims for (1) breach of the duty of good faith and fair dealing and (2) violation of article 21.21. He has not addressed in his brief to this court the district court's summary-judgment dismissal of his Article 21.55 claim. Thus, only the breach of contract claim is before this court.

[2] This court reviews for abuse of discretion a district court's decision to exclude expert testimony as a sanction for a violation of a pretrial order. *1488, Inc. v. Philsec Inv. Corp.*, 939 F.2d 1281, 1288 (5th Cir. 1991); *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996). "[O]ur court gives the trial court broad discretion to preserve the integrity and purpose of the pretrial order." *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990) (internal quotation omitted).

[3] *Geiserman*, 893 F.2d at 791; *see also Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1000 (5th Cir. 1998); *Bradley v. United States*, 866 F.2d 120, 124 (5th Cir. 1989) (citing *Murphy v. Magnolia Elec. Power Ass'n*, 639 F.2d 232, 235 (5th Cir.1981)).

his failure to timely designate.[4]  We take seriously this lack of explanation, having held, for example, that exclusion of expert witnesses "is particularly appropriate" where the party has "failed to provide an adequate explanation for their failure to identify their expert within the designated timetable."[5]  We reverse, nevertheless, because the three remaining factors strongly favor Betzel.

B

The second factor is the importance of the excluded testimony. Betzel urges that his experts' testimony is "very important," although he refuses, of course, to concede that he must lose on summary judgment without it.  State Farm responds that the testimony is unimportant because neither expert was even qualified to opine about mold causation.

The expert testimony is essential.  Putting aside State Farm's contention that neither expert is qualified to segregate covered losses from non-covered losses,[6] the two experts are still necessary to Betzel's case, particularly to his proof of the cost to rebuild his house.  Without his experts, Betzel cannot prove damages.

---

[4]Betzel hints on appeal that the failure was related "to discussions between counsel and personal affairs."

[5]*1488, Inc.*, 939 F.2d at 1289.

[6]We leave unanswered the question of whether this testimony provides "some evidence affording the jury a reasonable basis on which to allocate the damage." *Fiess v. State Farm Lloyds,* 392 F.3d 802, 807–08, 808 n.24 (5th Cir. 2004) (citing *Paulson v. Fire Ins. Exch.*, 393 S.W.2d 316, 319 (Tex. 1965)).

Of course, this court has applied this second factor in unexpected ways, sometimes even standing it on its head. In *Geiserman*, we "assume[d] *arguendo* that expert testimony was significant to Geiserman's case," but then noted, "so much the more reason to be sure its introduction was properly grounded."[7] And again, in *Barrett*, this court wryly noted that "the claimed importance of Plaintiffs' expert testimony merely underscores the need for Plaintiffs to have complied with the court's deadlines."[8]

Applying the second factor as intended, however, we find that it weighs in favor of the plaintiff, whose case depends on the excluded witnesses. We acknowledge that "the importance of such proposed testimony cannot *singularly* override the enforcement of local rules and scheduling orders,"[9] yet, as we will explain, the remaining factors also urge reversal.

C

The third factor is the prejudice to State Farm. Betzel argues that State Farm was not surprised by the two experts because (1) State Farm adjusters had met them during the remediation of Betzel's home and (2) Betzel identified them in discovery on March 17, 2005 — 11 days after the designation deadline — as "persons who may be called to testify." State Farm responds that they were

---

[7] *Geiserman*, 893 F.2d at 791–93.

[8] *Barrett*, 95 F.3d at 381.

[9] *Id.* (emphasis added).

7

unaware that either witness would be called as an *expert* until Betzel filed his motion on May 23, 2005. State Farm argues that allowing the late designation of these two experts would have significantly increased their litigation expenses since they already had prepared their motion for summary judgment in reliance on Betzel's lack of expert testimony. Further, they had been deprived of an opportunity to depose Matlock and Frantz as expert witnesses, to file *Daubert* challenges, and to rebut the late witnesses with their own experts.

We have been sympathetic to such prejudices in the past[10] and would be so again in the future, if they are supported by the facts. Here, however, State Farm's list of grievances better reflects the case law than the record. State Farm's motion for summary judgment only trivially relied on Betzel's lack of expert testimony. The substantive bulk of State Farm's 38-page motion relies, in fact, on the legal contention that mold is not covered under the HO-B policy. Only four sentences of State Farm's motion for summary judgment are dedicated to the argument that Betzel has "no evidence" on his breach of contract claim.[11]

---

[10]In *Geiserman*, for example, this court accepted such arguments, noting that late designation "would have disrupted the court's discovery schedule and the opponent's preparation," and that the defendant had relied "on Plaintiff's apparent decision to forgo expert testimony." Finally, this court acknowledged the "expense that would result from an extended discovery schedule for Geiserman's failure to adhere to deadlines." *Geiserman*, 893 F.2d at 791–93.

[11]Of course, State Farm did argue this point in opposing plaintiff's motion to allow late-designated experts, as well as in their summary-judgment reply, a document filed after the plaintiff's notice of appeal.

D

What prejudice remains could have been cured with a continuance; that is the fourth factor. Indeed, "we have repeatedly emphasized that a continuance is the preferred means of dealing with a party's attempt to designate a witness out of time."[12] A continuance would have given State Farm an opportunity to depose Matlock and Frantz as expert witnesses, to file *Daubert* challenges, and to designate experts for rebuttal.

We have cautioned that "[a] continuance might have cured any prejudice arising from the defendants' late designation, but such a remedy would have entailed additional expense to the plaintiff and further delayed its day in court."[13] We have further warned that "a continuance would not deter future dilatory behavior, nor serve to enforce local rules or court imposed scheduling orders."[14]

Because State Farm would have incurred no unwarranted additional expenses in filing a second motion for summary judgment and because the imposed sanction was dispositive of the case, we must find an abuse of discretion. We do not suggest that the able district judge abused his discretion in imposing a sanction. Rather, it is that the extreme end of the sanction spectrum was imposed against the lowest end of the prejudice spectrum. Any

---

[12]*Campbell*, 138 F.3d at 1001 (internal quotation omitted).

[13]*1488, Inc.*, 939 F.2d at 1289.

[14]*Id.*

number of less-dispositive sanctions, in conjunction with a continuance, were at hand, such as prohibiting Betzel from filing any expert supplements, denying Betzel any costs and attorneys' fees associated with the deposition of the late-designated experts, denying Betzel 21.55 penalties or interest for the delay associated with the continuance, or even requiring Betzel to reimburse State Farm's costs and attorneys' fees associated with the additional expert discovery.

### III

After excluding Betzel's experts, the district court granted State Farm's motion for summary judgment, holding that he had no evidence of breach of contract. Even with these experts now included, State Farm urges us to affirm the district court's summary-judgment on an alternative ground raised below: that the Texas HO-B policy does not cover mold. This argument, urges State Farm, is directly supported by the Texas Supreme Court's recent decision in *Fiess*.[15] We disagree that *Fiess* is dispositive[16] and decline to affirm on this alternative ground.

In *Fiess*, the Supreme Court of Texas answered our certified question, holding that the ensuing-loss provision of the Texas HO-B

---

[15]*See Fiess v. State Farm Lloyds*, 202 S.W.3d 744 (Tex. 2006).

[16]*See Balandran v. Safeco Insurance Co.*, 972 S.W.2d 738 (Tex. 1998). *Compare Kolenic v. Travelers Lloyds of Texas Ins. Co.*, No. 03-02-00366-CV, 2003 WL 247117, at *2 (Tex.App.–Austin February 06, 2003, no pet.) (mem.op.) (not designated for publication) *with Salinas v. Allstate Texas Lloyd's Co.*, 278 F.Supp.2d 820, 823 (S.D.Tex. 2003).

policy did not cover mold contamination.[17]  Way back in federal district court, the Fiesses had also urged a backup argument, contending that coverage for mold was provided by the exclusion-repeal provision.  Due to a defect in their notice-of-appeal, we declined to exercise jurisdiction over the backup argument.[18]  The Supreme Court of Texas declined as well.  That question is presented here, however, since the exclusion-repeal provision relates to losses resulting from "accidental discharge, leakage, or overflow of water or steam from within a plumbing, heating or air conditioning system or household appliance."

Although we may affirm on any ground advanced below in the motion for summary judgment,[19] we decline to further address this unsettled and important question of state law.  It is neither necessary to this opinion, nor was it fully briefed by the parties.

**IV**

The judgement of the district court is REVERSED and the case is REMANDED for further proceedings.

---

[17]*Fiess*, 202 S.W.3d at 744.

[18]*Fiess*, 392 F.3d at 806–07.

[19]*See Employers Ins. of Wausau v. Occidental Petroleum Corp.*, 978 F.2d 1422, 1426–27 (5th Cir. 1992).

11