# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 8, 2024

Lyle W. Cayce
Clerk

_____

No. 23-60310

_____

Yashia Culberson, *Individually and On Behalf of* All Heirs-At-Law and Wrongful Death Beneficiaries of Dale O'Neal, deceased; The Estate of Dale O'Neal,

*Plaintiffs—Appellants*,

*versus*

Clay County; Sheriff Eddie Scott, *In His Individual and Official Capacity*; Officers and Jail Employees John and Jane Does 1-5, *In Their Individual and Official Capacities Representing Jail Guards of the Clay County Jail and/or Other Employees, Including Supervisory Officials Whose Identities are Currently Unknown*; Annie Avant, *In Her Individual and Official Capacity*; Cynthia Myles, *In Her Individual and Official Capacity*,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:21-CV-114

_____

Before Higginbotham, Smith, and Higginson, *Circuit Judges*.

Stephen A. Higginson, *Circuit Judge*:

The estate and heirs (Culberson) of Dale O'Neal, a pre-trial detainee murdered by his cellmate in Clay County's jail, sued several officers and the

County under Section 1983 for failure to protect O'Neal in violation of the Fourteenth Amendment.

The district court agreed with the magistrate judge's exclusion of a late-designated expert (and accompanying report), on which Culberson relied to establish the County's liability. It then granted summary judgment to all defendants because the underlying constitutional claim failed: Culberson could not create a fact question as to whether the individual defendants acted with deliberate indifference. This was a closer question for the intake officer (Avant), but the district court concluded that, in the alternative, she had qualified immunity. On appeal, Culberson argues only that it was an abuse of discretion to exclude the expert and error to grant summary judgment to Avant.

We AFFIRM.

## I.

Dale O'Neal was arrested on March 8, 2019, by the West Point Police Department pursuant to a bench warrant for failure to appear before the Municipal Court of West Point and on an arrest warrant for trespass issued by the Clay County Justice Court. He was transported to the Clay County Detention Center. Jail personnel last saw O'Neal alive and uninjured at approximately 4:23 AM on March 15. O'Neal was found dead at 7:40 AM. His cellmate, Cameron Henderson, strangled O'Neal to death with the cord attached to the phone in their jail cell.

Henderson had been arrested two days prior, on March 13, after a 9-1-1 caller reported Henderson threatening his two grandmothers with a knife. The arresting officer, Parker Smith, listed three charges on Henderson's jail intake sheet: A "warrant for shopl[i]fting" and "disturbance of peace of a business," with "simple assault by threat" crossed out at an unknown time. The intake officer, Annie Avant, booked

Henderson at approximately 2:30 PM, and assigned him to the same cell as O'Neal.

The parties dispute what information was conveyed to Avant by Smith and through the booking system. Smith testified that he found Henderson with a knife and that arresting officers would tell intake officers if individuals were found with weapons. He answered affirmatively when asked whether he "told someone at the detention center about the dangerous Mr. Henderson, correct?" But when asked directly whether he "remember[ed] specifically telling the booking officer" that Henderson "had a knife or had made threats," Smith answered "no." When Avant was asked whether she "recall[ed] whether or not Officer Smith said anything to you about the specifics of how Henderson was acting before he was arrested," she answered "no." There was also conflicting testimony over whether the booking system would have revealed that Henderson was, five months earlier, determined to be a threat and put on a Chancery Court hold. Henderson's intake sheet was completed, except for answers to questions about whether he appeared to be under the influence or experiencing withdrawal.

On March 14, Henderson's grandfather moved in Chancery Court to commit Henderson to drug addiction treatment because he was a risk to himself and others. The Chancery Court granted the motion that day and ordered the County to transport Henderson to a physician, but the fax transmittal of the order shows that the jail did not receive it until at least two hours after O'Neal was found dead.

## II.

Culberson argues that it was error to exclude the late-designated expert, who submitted a report identifying County "customs, practices and procedures" that purportedly led to O'Neal's death. We review for abuse of discretion. *1488, Inc. v. Philsec Inv. Corp.*, 939 F.2d 1281, 1288 (5th Cir. 1991).

Briefly, a review of the record confirms that the designation was late. Culberson essentially argues that the order granting her motion to extend the discovery and dispositive motions deadlines extended a different deadline: the deadline to designate Rule 26(a)(2) experts. But these deadlines were always treated differently. The case management orders (CMOs) set separate deadlines for discovery, the parties' designations of experts, and "dispositive motions and *Daubert*-type motions challenging another party's expert." Fifty-seven days after her expert designation deadline, Culberson filed a motion. That motion identified only the "current discovery deadline" and "current motions deadline" and requested an extension of "CMO deadlines by 60 days due to the parties' ongoing discovery," specifically the "discovery and motions deadlines in this matter." The magistrate judge denied the motion but noted that the parties could make a renewed request should the trial be continued, and repeated the discovery and motions deadlines. The trial was ultimately continued, and the district court's order stated that the "Magistrate Judge will reset all deadlines associated with the case once the trial date is reset." When the new trial date was noticed, the magistrate judge ordered new deadlines for discovery and motions but referenced no other deadlines. Culberson designated her expert on the day of the new discovery deadline but the order extending the discovery deadline had not extended the expert designation deadline. It was therefore untimely.

Next, to determine whether exclusion was an abuse of discretion, we consider: "(1) [T]he explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007) (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)).

First, we agree with the magistrate judge that Culberson did "not provide any explanation for . . . [her] failure to designate the expert[] in a

timely manner," and "relied solely on the argument the designation was timely."

Second, we turn to the expert's importance. The magistrate judge concluded that, while Culberson did not refute defendants' argument that all of the underlying evidence described in the report was admissible, this factor still "strongly favor[ed]" Culberson because "parties typically do not" engage experts unless "testimony is at least significantly helpful." But the magistrate judge's observation does not weaken the argument that Culberson could have relied on the underlying evidence from the record that the report discussed. That evidence includes: Avant's deposition testimony that officers make cell assignments based on the charge of the booked individual without considering the person's past booking history; evidence (form unspecified) that Henderson "acted up" in the booking area; evidence of a glass tube, which might have been drug paraphernalia, in the cell, suggesting that Henderson may have used drugs that made him more violent; the jail's policy requiring officers to investigate a detainee's behavior and record to determine whether to perform a strip search, which was not performed on Henderson; the failure to perform welfare and security checks because of the time elapsed between when the last officer entered the area and when O'Neal was discovered; and general mismanagement evidenced by the fact that an inmate was ordered released but remained in the jail for years. Culberson never explained why she could not have relied on this underlying evidence in the record at summary judgment.

Third, we consider prejudice to the opposing party. *Betzel*, 480 F.3d at 707. The magistrate judge concluded that "defendants would be substantially prejudiced," because they "assert[ed], without contradiction, that they had no prior notice of" Culberson's intent to call an expert witness and "were likely unprepared to do so at that late date." We agree that, though discovery was extended, that "was not sufficient to counter the unfair

surprise" and allowing this late designation would be "contrary to the practice of [the district court] as shown by [CMOs] entered in almost every case."

Fourth, we consider whether a continuance would have cured this prejudice. *Betzel*, 480 F.3d at 707. The magistrate judge pointed to the fact that the case was already continued and reasoned that "a second continuance would result in further delay and increased expense to defend this lawsuit." Additionally, the magistrate judge looked to the fact that the first and third factors favored exclusion, which was relevant because otherwise, scheduling orders and local rules would never be enforced if continuances were always granted. And we have "repeatedly emphasized" that while "continuance is the preferred means of dealing with a party's attempt to designate a witness out of time," it "would not deter future dilatory behavior, nor serve to enforce local rules or court-imposed scheduling orders." *Betzel*, 480 F.3d at 709. That is the case here.

Culberson fails to show an abuse of discretion. *Betzel*, on which she relies, is distinguishable. In that case, exclusion was "the extreme end of the sanction spectrum . . . imposed against the lowest end of the prejudice spectrum," where the opposing party only "trivially relied on . . . lack of expert testimony," and instead almost wholly relied on legal contentions at summary judgment. *Id.* at 708. But Culberson conceded prejudice and never explains why exclusion is "extreme" when, unlike in *Betzel*, a continuance had already been granted. Furthermore, while the party offering the expert in *Betzel* needed the expert to prove *any damages*, Culberson never addresses why she could not have relied on the record evidence discussed by the expert. *Id.* at 707.

## III.

We affirm the grant of summary judgment to Avant on the basis of qualified immunity. "The doctrine of qualified immunity protects

6

government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts engage in a two-prong inquiry, taking the prongs in any order. *Id.* at 236. "The first asks whether the facts, '[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right [.]'" *Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014) (alternation in original) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Id.* at 656 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Culberson "has the burden to point out the clearly established law." *Clarkston v. White*, 943 F.3d 988, 993 (5th Cir. 2019). After Avant raised the defense of qualified immunity, Culberson failed to point to any case—sufficiently analogous or otherwise—supporting the proposition that the alleged constitutional violation was of clearly established law. Culberson "forfeit[ed] [this] argument by failing to raise it in the first instance in the district court," *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021), and we therefore do not reach whether there is any clearly established law to which Culberson *could* have pointed.

Culberson asserts that the district court was "simply incorrect" that Culberson failed to do so because there were "twelve cases (four from the Supreme Court, eight from this Court) on qualified immunity cited by Plaintiffs." Primarily, Culberson maintains that her citation to *Brown v. Callahan*, 623 F.3d 249 (5th Cir. 2010) was an "argu[ment] that the qualified

immunity issue as to Avant—who, like the jail staff in *Brown*, was present for the relevant events—could not be decided on summary judgment." Culberson's opposition to summary judgment only cited these cases, including *Brown*, however, as a boilerplate recitation of the general standard that courts apply when defendants assert a qualified immunity defense at the summary judgment stage. Furthermore, even if Culberson had used *Brown* to argue there was a violation of clearly established law, that case did not address whether jail staff were entitled to qualified immunity because only the supervising sheriff's appeal was before the court. *See Brown*, 623 F.3d at 254 ("[w]hether . . . other staff violated [plaintiff's] rights is not before us" and "we express no opinion on [the] merits"). Culberson did not carry her burden.

* * *

For the foregoing reasons, the judgment of the district court is AFFIRMED.