# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 3, 2025

Lyle W. Cayce
Clerk

No. 24-10338

IN THE MATTER OF NEW YORK INN, INCORPORATED

*Debtor*,

NEW YORK INN, INCORPORATED; VIVA INN, INCORPORATED,

*Appellants*,

*versus*

ASSOCIATED INDUSTRIES INSURANCE COMPANY,
INCORPORATED,

*Appellee*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC Nos. 3:23-CV-1342, 3:23-CV-852,
3:23-CV-878

---

Before ELROD, *Chief Judge,* and CLEMENT and RAMIREZ, *Circuit Judges.*

PER CURIAM:[*]

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 24-10338

Associated Industries Insurance Co. (Associated) issued an insurance policy to Viva Inn, Inc. (Viva) for the Viva Inn Motel in Arlington, Texas (the Motel). Following winter storm Uri in February 2021, Viva's adjuster filed a claim for water damage to the Motel from a burst pipe. Between March 2021 and June 2022, Associated paid Viva $271,538.65 for damage to the Motel.

New York Inn, Inc. (New York Inn), a corporate affiliate of Viva's, filed an adversary proceeding in bankruptcy court against Associated, which Viva later joined. New York Inn and Viva (collectively, Motel Owners) appeal the bankruptcy court's grant of Associated's motion to dismiss and Associated's motion to deny attorneys' fees. Motel Owners also appeal the district court's grant of Associated's motion for summary judgment, which was based on the bankruptcy court's report and recommendation.

The bankruptcy court's rulings on the motion to dismiss and motion to deny attorneys' fees are not properly before us. As to the district court's grant of Associated's motion for summary judgment, we AFFIRM. We REMAND to the district court to rule on the outstanding appeals relating to the motion to dismiss and motion to deny attorneys' fees.

## I.

## A.

Associated issued an insurance policy to Viva for commercial property and general liability coverages for the Motel from August 9, 2020, to August 9, 2021 (the Policy). Although Viva is the named insured on the Policy, Viva asked Associated to include New York Inn[1] as an additional insured, and Associated added New York Inn for general liability coverage.

---

[1] Viva and New York Inn have the same owner.

On February 17, 2021, winter storm Uri's freezing temperatures caused the pipes in the Motel's sprinkler system to freeze and burst, flooding the Motel. On February 27, 2021, Viva's public adjuster, Kevin Small, sent Associated a letter and reported a claim for the water damage from the burst pipes. Associated acknowledged receipt of the claim three days later.

Associated hired an independent adjusting firm, Sedgwick, to investigate Viva's claim, and Sedgwick assigned Shaun Keefer to inspect the Motel. On March 16, 2021, Keefer inspected the Motel's premises. Based on his inspection, Keefer recommended that Associated pay Viva $153,961.57, representing the actual cash value (ACV) amount of the loss to the Motel.[2] Keefer also provided an estimate for the replacement cost value (RCV) of repairs: $175,256.42.[3]

On March 30, 2021, Associated sent a letter to Viva approving a payment for $153,961.57 and requesting documentation to support payment for the RCV, including an itemized invoice of completed repairs and replacements and the materials used.

In April 2021, Small requested an advance payment for Viva's business interruption loss. Christine Rozzelle, the adjuster assigned to Viva's claim, responded that Associated would consider the payment but requested Viva's profit and loss statements for the prior three months to calculate the payment. Rozzelle also noted that Viva had not started mitigating the water damage to the Motel and urged Small to begin the process "immediately to prevent additional damages." Rozzelle requested that Small send her the mitigation invoice once repairs were completed so Associated could calculate the RCV payment. Rozzelle denied Viva's request for moisture mapping of

---

[2] ACV reflects the replacement cost minus depreciation.

[3] RCV reflects the replacement cost without deduction for depreciation.

No. 24-10338

the Motel because "it is an excessive cost, and will unnecessarily delay the mitigation process."

Associated's accountant separately reached out to Small to request Viva's profit and loss statements dating back to January 2020, among other documents, to calculate the Motel's loss from business interruption. The only response he received was a profit and loss statement for October 20, 2020, through December 20, 2020.[4] Based on this document, the accountant estimated the business interruption loss from February 17, 2021, to May 31, 2021, as $74,295. Rozzelle used that estimate to calculate the payment owed to Viva and issued Viva a $26,349.81 check on October 21, 2021.[5] Rozzelle also issued Viva an advance payment of $10,000 for content loss but noted that Small "ha[d] not submitted any inventory of damaged contents to date . . . [and] no further payments will be issued unless and until a full inventory of all damaged contents is submitted."

Viva hired Decagon Development Company, Inc. (Decagon), owned by Roger Pate, to renovate the Motel. Decagon sent three invoices to Viva, totaling $682,244. Viva's legal counsel sent Associated a letter demanding $580,689.18[6] to cover its building repairs and loss of contents; $400,000 for business interruption loss; and $294,206.75 for attorneys' fees. In response

---

[4] Motel Owners assert that they provided Associated with their tax returns and financials dating back to 2018, but these documents were provided in July 2022—after Associated had calculated the estimate for business interruption. Motel Owners also assert that New York Inn's sworn statement of financial affairs was on file since at least 2021 in the bankruptcy proceeding but does not provide a record citation to support that assertion.

[5] The $26,349.81 payment reflects the estimate provided by Associated's accountant, $74,295, minus the coinsurance penalty, $45,802.05, and consideration of the 72-hour waiting period, $2,143.14.

[6] This number is based on the estimate prepared by Small of $580,689.18 for repairs to the Motel.

to the letter, Associated hired Cavalry Construction (Cavalry) to complete an inspection of the Motel and provide an estimate of repairs. Cavalry estimated that repairs would cost $236,188.84, excluding contents.

In June 2022, Motel Owners' attorney sent Associated the Decagon invoices and requested payment for the difference between the initial ACV payment of $153,961.57 and the costs incurred by Decagon. In response, Associated requested additional documentation from Motel Owners to support the repair costs and sent Cavalry to conduct a second walkthrough of the Motel. Based on Cavalry's estimate, and once Associated determined that the repairs to the Motel had been substantially completed, Associated paid Viva $81,227.27.

In December 2022, the Motel reopened.

## B.

In May 2021, an involuntary chapter 11 bankruptcy proceeding was filed against New York Inn in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

New York Inn filed a complaint in the bankruptcy proceeding against Associated and other insurance companies that were later dismissed. New York Inn alleged that the insurance companies failed to perform under the Policy by underpaying for New York Inn's insurance claim and raised a breach of contract claim, statutory good faith claims, and a common law good faith claim.

Associated filed a motion to dismiss New York Inn as a plaintiff, which the bankruptcy court granted for lack of standing. New York Inn filed an amended complaint listing itself and Viva as plaintiffs and asserting a breach of contract claim, statutory bad faith claims, a common law bad faith claim, a

request for declaratory judgment, and a request for reformation of the Policy. In addition to damages, Motel Owners sought attorneys' fees and costs.

Associated filed another motion to dismiss New York Inn as a plaintiff for lack of standing and also moved to dismiss the declaratory judgment cause of action. Before the bankruptcy court ruled on the motion to dismiss, Associated filed a motion to deny Viva's request for attorneys' fees. The bankruptcy court granted that motion and concluded that Viva could not recover attorneys' fees after December 13, 2022, and Motel Owners appealed to the United States District Court for the Northern District of Texas. Then, the bankruptcy court granted the motion to dismiss with prejudice, and Motel Owners appealed to the United States District Court for the Northern District of Texas. The district court consolidated the appeals from the motion to dismiss and motion to deny attorneys' fees but did not rule on those appeals.

Associated also filed a motion for summary judgment. The bankruptcy court issued a report and recommendation advising the district court to grant the motion. The district court adopted the report and recommendation and granted summary judgment.

Motel Owners now appeal the district court's grant of summary judgment and the bankruptcy court's grant of the motion to dismiss and motion to deny attorneys' fees.

## II.

"This court has a continuing obligation to assure itself of its own jurisdiction, sua sponte if necessary." *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 468 (5th Cir. 2020) (en banc) (quoting *United States v. Pedroza-Rocha*, 933 F.3d 490, 493 (5th Cir. 2019) (per curiam)).

This court has jurisdiction over the appeal from the district court's grant of summary judgment. 28 U.S.C. § 1291.

Associated raises the issue of whether this court has jurisdiction over the appeals from the bankruptcy court's orders dismissing New York Inn as a party and the declaratory judgment cause of action and granting the motion to deny attorneys' fees, but then contends that the parties consented to the bankruptcy court's final rulings on those motions. Consent, however, is not the measure of this court's jurisdiction over an appeal from a bankruptcy court. *See* 28 U.S.C. § 158(d).

A court of appeals has jurisdiction over appeals from "final decisions, judgments, orders, and decrees" entered by a district court. 28 U.S.C. § 158(d)(1). There was no final decision, judgment, order, or decree from the district court with respect to the bankruptcy court's rulings on the motion to dismiss and motion to deny attorneys' fees. *In re Greene Cnty. Hosp.*, 835 F.2d 589, 590, 594 (5th Cir. 1988) ("28 U.S.C. § 158 limits circuit court jurisdiction to 'final' orders of district courts. . . . [T]he Fifth . . . Circuit[] hold[s] that the game ends only when the district court says it does."); *see also In re Yazoo Pipeline Co.*, 746 F.3d 211, 214 (5th Cir. 2014) ("This Court's jurisdiction over appeals from cases arising in bankruptcy court extends to all 'final judgments, orders and decrees' entered by the district courts.").

There is an alternative path to jurisdiction over bankruptcy appeals, but that path requires certification by the bankruptcy court, district court, or bankruptcy appellate panel, of which there is no evidence below, and authorization by this court of appeals, which did not occur. 28 U.S.C. § 158(d)(2)(A). Accordingly, we do not have jurisdiction over the appeals of the bankruptcy court's orders granting the motion to dismiss and motion to deny attorneys' fees. *In re Burch*, 835 F. App'x 741, 747 (5th Cir. 2021) (per curiam) (concluding that when a party "appeals not the district court's

dismissal of [his] appeals, but rather the bankruptcy court's dismissal of the underlying actions," this court lacks appellate jurisdiction under § 158(d)(1), and when a party does not "satisfy the statutory certification requirement," this court lacks appellate jurisdiction under § 158(d)(2)).

## III.

Adopting the bankruptcy court's recommendation, the district court granted Associated's motion for summary judgment on (A) Motel Owners' breach of contract claim, (B) Motel Owners' extra-contractual claims, and (C) Motel Owners' request to reform the contract to include New York Inn as an additional insured without limitation.

"We review the district court's grant of summary judgment *de novo.*" *Data Specialties, Inc. v. Transcon. Ins. Co.*, 125 F.3d 909, 911 (5th Cir. 1997). Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "All reasonable inferences must be viewed in the light most favorable to the party opposing summary judgment, and any doubt must be resolved in favor of the non-moving party." *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017).

Rule 56(a) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (analyzing the text of Rule 56(c), which is now found in Rule 56(a)). "If a movant alleges an absence of specific facts necessary for a nonmovant to establish an essential element of its case, then the nonmovant must respond by setting forth specific facts showing that there is a genuine [dispute] for trial." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (cleaned

up). Thereafter, "if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Id.* (quotations omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (noting summary judgment is appropriate if the non-movant's evidence is "merely colorable" or "not significantly probative").

**A.**

Motel Owners raise three theories of breach of contract: Associated's failure to pay the full amount owed for (1) repairs to the Motel (Building Repair), (2) contents in the Motel (Contents), and (3) interruption to the business caused by damage from the storm (Business Interruption).

The parties agree that Texas law controls this case. "Under Texas law, '[i]nsurance policies are controlled by rules of interpretation and construction which are applicable to contracts generally.'" *Kinsale Ins. Co. v. Flyin' Diesel Performance & Offroad, L.L.C.*, 99 F.4th 821, 826 (5th Cir. 2024) (alteration in original) (quoting *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (per curiam)). We begin first with the text of the contract to ascertain the parties' intent and determine whether it is possible to enforce the contract as written. *Id.* (citing Texas cases). We give terms their plain meaning unless the contract shows the parties intended a different meaning. *Id.*

"In Texas, '[t]he essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)).

"An insurer is liable only for losses covered by the policy." *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167,

170 (5th Cir. 2018). The insured bears the burden of proving they suffered a loss and that the loss is covered by the relevant insurance policy. *Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 400 (Tex. 2016); *Data Specialties*, 125 F.3d at 911; *Dall. Nat'l Ins. Co. v. Calitex Corp.*, 458 S.W.3d 210, 222 (Tex. App.—Dallas 2015, no pet.) ("[I]t is a rule embodying the basic principle that insureds are not entitled to recover under their insurance policies unless they prove their damage is covered by the policy."). If the insured satisfies this burden, the burden shifts to the insurer to prove that an exception to coverage applies. *Seger*, 503 S.W.3d at 400–01.

**1.**

The "Business and Personal Property Coverage Form" outlines the coverage for Building Repair. The Policy covers "direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss." The term "Covered Cause of Loss" explicitly excludes damage caused directly or indirectly by "organic pathogens," pollution, and asbestos. Payments for Building Repair reflect the ACV unless the insured makes the claim on an RCV-basis, subject to the terms in the Policy:

> **c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage. . . .
>
> **e.** We will not pay more for loss or damage on a replacement cost basis than the least of (1), (2) or (3) . . . :
>
> > **(1)** The Limit of Insurance applicable to the lost or damaged property;
> >
> > **(2)** The cost to replace the lost or damaged property with other property:

No. 24-10338

**(a)** Of comparable material and quality; and

**(b)** Used for the same purpose; or

**(3)**    The amount actually spent that is necessary to repair or replace the lost or damaged property.

If Motel Owners made a claim on an RCV-basis that satisfied the Policy's requirements, Associated would pay Motel Owners the difference between the ACV already paid and the RCV.

Associated paid Motel Owners $235,188.84 for Building Repair ($153,961.57 in March 2021 and $81,227.27 in June 2022). It is not entirely clear from Motel Owners' brief what additional sum they believe they are owed, but from our calculations, we believe the sum is around $435,305.77.[7] In evaluating Motel Owners' breach of contract claim with respect to Building Repair, we assess whether Motel Owners' evidence of direct damage to the Motel and evidence that they are entitled to an additional payment for the fire alarm and sprinkler system (Fire Suppression System) create a genuine dispute of material fact. In both cases, the answer is no.

**i.**

"Under the doctrine of concurrent causes, when covered and non-covered perils combine to create a loss, the insured is entitled to recover that portion of the damage caused solely by the covered peril." *Dall. Nat'l Ins. Co.*, 458 S.W.3d at 222. The insured has the burden of separating the damage attributable to the risk covered by the insurance policy versus damage caused by non-covered risks. *Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*,

---

[7] Motel Owners assert that their "total contract damages" are $663,955.96. This number includes $73,650.19 for Business Interruption and $155,000 for Contents. Subtracting the alleged outstanding costs for Business Interruption and Contents from the total contract damages leaves us with the damages attributable to Building Repair ($435,305.77).

130 S.W.3d 181, 198 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *accord* 46A Tex. Jur. 3d Insurance Contracts and Coverage § 1231. The insured must provide "evidence which will afford a reasonable basis for estimating the amount of damage or the proportionate part of damage caused by a risk covered by the insurance policy." *Dall. Nat'l Ins. Co.*, 458 S.W.3d at 223 (quoting *Travelers Indem. Co. v. McKillip*, 469 S.W.2d 160, 163 (Tex. 1971)); *accord* 46A Tex. Jur. 3d Insurance Contracts and Coverage § 1230. "[F]ailure to segregate covered and noncovered perils is fatal to recovery." *Comsys*, 130 S.W.3d at 198.

The bankruptcy court concluded that Viva's[8] evidence did not differentiate between costs of Building Repairs attributable to risks covered by the Policy (i.e., the water damage from the storm) and costs attributable to risks not covered by the Policy (i.e., the mold damage due to the delay in remediating the water damage). Specifically, the bankruptcy court explained that (1) the invoices from Decagon only referred to general line items for repair; (2) the subcontractor invoices provided generalized descriptions of work completed on the Motel without specifying "the scope of work, materials used, or where the work was completed"; and (3) the Motel Owners' expert, Pate, offered inconsistent statements about whether the repairs related to damage covered by the Policy, and his statements did not differentiate between covered and non-covered damage.

Motel Owners argue that the bankruptcy court, and by adoption the district court, overlooked issues of fact that preclude summary judgment. Motel Owners specifically argue that the bankruptcy court improperly attributed the delay in remediation to the Motel Owners, rather than Associated; did not recognize that Motel Owners sought moisture mapping

---

[8] At this point, the bankruptcy court had dismissed New York Inn as a party.

before remediation, and the request was denied; and did not acknowledge the scarcity of remediation contractors following the storm.

Although we sympathize with Motel Owners' struggle to secure a contractor following the storm and their insufficient funds to commence immediate remediation, that does not make the doctrine of concurrent causes disappear. Motel Owners do not provide any case law to support the proposition that an insurer's delay in issuing a payment for a claim means that any resulting damage to the property during the delay should be covered by the insurance policy. Motel Owners' argument also contradicts the language in the Policy that instructs the insured to "[t]ake all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property." Further, Rozzelle urged Small to begin water mitigation at the Motel and noted, consistent with the Policy, that "[i]f additional damages do occur as a result of the delay in drying the building, such as mold, they will not be covered under this claim, as your policy requires you to take all reasonable steps to protect the property from further damage." The responsibility rested with Motel Owners to begin remediation efforts; they waited at least six weeks to do so, and as a result, the Motel suffered additional, non-covered damage.

The fact that Associated rejected Motel Owners' request for moisture mapping adds nothing to their argument. Motel Owners do not argue that moisture mapping would have assisted with remediating the Motel's water damage, and Rozzelle specifically explained that it "will unnecessarily delay the mitigation process."

Motel Owners provided three sources of evidence of Building Repair costs: the Decagon invoices, subcontractor invoices, and expert testimony

from Pate. Often, "expert testimony is essential" to prove the cost to repair the Motel. *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007).

As to the Decagon and subcontractor invoices,[9] Motel Owners concede that the invoices included references to non-covered repairs but argue that "such repairs were *not included* in Appellants' damages calculations," and even if they were, they "can be easily deducted with mathematical certainty."

The fact that the invoices do not differentiate between covered and non-covered repairs is decisive: Motel Owners cannot provide a reasonable basis for estimating the amount of damage or proportionate damages attributable solely to the water damage (rather than the mold) with invoices that do not differentiate between those two causes. *McKillip*, 469 S.W.2d at 163 ("There is a complete absence of evidence concerning the fair market value of the building immediately after the windstorm; or of the cost to repair or replace it immediately after the windstorm. Evidence of costs of repairs was related solely to the building's condition after the snowstorm and collapse."); *Dall. Nat'l Ins. Co.*, 458 S.W.3d at 227 (testimony that "stone replacement costs" were approximately $300,000; "window replacement and related costs (necessitated by defective installation that was causing interior water damage)" was approximately $103,000; and "'the cost to replace felt, plywood sheathing, substructure damages, etc.' beneath the exterior stone 'would be between $100,000 and $300,000'" "did not apportion any costs between covered damages and damages excluded"); *see*

---

[9] The bankruptcy court raised a separate issue relating to the subcontractor invoices, namely, whether they were properly admissible given that Viva did not attach those invoices in its response to the motion for summary judgment. We need not address this point because we find the subcontractor invoices insufficient—even if admissible—for the reasons explained herein.

*also Paulson v. Fire Ins. Exch.*, 393 S.W.2d 316, 319 (Tex. 1965) (concluding that an estimate that did not "attempt to estimate the proportionate part of the damage caused by wind action, independent of all other causes" did not differentiate between covered and non-covered causes).

As to Pate's statements, Motel Owners assert that Pate's deposition testimony does not contradict his affidavit. The record says otherwise.

During his deposition in August 2022, Pate testified that some of the line items on his invoice and the repairs he made were not done to remediate damage caused by the flood. In his affidavit filed in January 2023, Pate stated that "[m]y invoice and billing only includes work done to remediate the flood damage. Other work, such as for the roof, does not appear in Decagon's charges."

Pate's affidavit is inconsistent with his deposition testimony. Take the fire extinguishers as an example. In Pate's deposition, he testified that the fire extinguishers were replaced because they were old rather than because of the burst pipe. The fire extinguishers were included in his invoice. But then in his affidavit, Pate changed his tune and said the invoice only included work done to remediate flood damage. Clearly, that is not the case. When a party's testimony conflicts with his or her statements in an affidavit, the party needs to provide an explanation. *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999). "[A] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Id.* Here, Motel Owners do not provide an explanation; they simply assert there is no conflict.

But even setting aside Motel Owners' failure to explain the conflict between Pate's deposition testimony and affidavit, Pate's statements do not

create a genuine dispute of material fact as to whether Associated owes Motel Owners more money for Building Repairs. Pate's statements do not differentiate between costs attributable to covered versus non-covered damages. *Dall. Nat'l Ins. Co.*, 458 S.W.3d at 227 (concluding that expert testimony that "did not apportion any costs between covered damages and damages excluded" did not provide a "'reasonable basis' in the record 'for estimating the amount of damage or the proportionate part of damage caused by a risk covered by the insurance policy'" (quoting *McKillip*, 469 S.W.2d at 163)); *Tchakarov v. Allstate Indem. Co.*, No. 3:20-CV-2769, 2021 WL 4942193, at *6 (N.D. Tex. Oct. 22, 2021) ("Worsham's testimony indicates that plaintiffs' roof was damaged by both covered and non-covered causes of loss."); *Hamilton Props. v. Am. Ins. Co.*, 643 F. App'x 437, 442 (5th Cir. 2016) (per curiam) ("At most, Shingler claimed he could show that the *current* damage to the property (or the damage he observed in August 2013) can be *linked* to the July hailstorm.").

### ii.

Associated's payments to Motel Owners for Building Repair included money to repair and replace the Fire Suppression System. Associated provided Viva with a $45,056.18 ACV payment for the Fire Suppression System and an additional $5,464.80 RCV payment. Motel Owners argue that Associated still owes them between $3,084.61 and $45,056.18. To request additional RCV payments for the Fire Suppression System, Motel Owners had to submit proof that the repairs were of "comparable material and quality" under the terms of the Policy.

Motel Owners argue that the bankruptcy court erred in its calculations by ignoring the estimate from Diversified Fire Protection, Inc. to replace the sprinkler system ($90,112.36) and the fire alarm system ($21,859.21). Motel Owners also argue that the bankruptcy court erred by assuming that replacing

a single plastic pipe with a new metal pipe justified forfeiture of $40,000 under the Policy. But as the bankruptcy court pointed out, Viva did not provide proof, as required by the Policy, that it replaced the Fire Suppression System with materials of comparable quality. Motel Owners do not dispute that at least one of the original plastic pipes in the sprinkler system was replaced with a metal pipe, and Diversified's estimate confirms that the new sprinkler system used metal piping. Because Motel Owners do not offer any argument that the plastic and metal pipes are of comparable material and quality, they are not entitled to more money for the RCV payment. *Cf. Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 425 (Tex. 2004) ("Mex–Tex's roofing contractor and its expert at trial both testified that the old and new roofs were comparable. . . . In these circumstances, the trial court could find that Republic breached the policy by refusing to pay the cost of the new roof.").

***

For the foregoing reasons, Motel Owners' evidence does not create a genuine dispute of material fact as to whether Associated breached the Policy by underpaying for Building Repair.

**2.**

Associated paid the Motel Owners $10,000 for Contents. Motel Owners claim that Associated owes them an additional $145,000 to $165,000.

Recovery for Contents, like Building Repair, is governed by the "Building and Personal Property Coverage Form" of the Policy, which covers "direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss." The Policy also states: "At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed." The

Policy further provides that Associated "will pay for covered loss or damage within 30 days after [Associated] receive[s] the sworn proof of loss, if [Viva] ha[s] complied with all of the terms of this Coverage Part, and" the parties reach an agreement on the amount of loss or make an appraisal award.

Rozzelle informed Viva that Associated would pay $10,000 for Contents but specified that "no further payments will be issued unless and until a full inventory of all damaged contents is submitted including a description of the items, the quantity of each damaged item, the age of the items, and the current replacement cost of the items." Rozzelle also attached a contents worksheet that Motel Owners could fill out and submit to Associated. This request is consistent with the language in the Policy requiring additional documentation.

The bankruptcy court concluded that no reasonable juror could find that Viva was entitled to more than $10,000 for Contents because Viva had not submitted the required documentation for additional coverage, the valuation data Viva points to is outdated, and no credible evidence exists in the record showing that Viva paid more than $9,600 to replace its Contents.

Motel Owners do not dispute that they did not submit the requested documentation but instead argue that the bankruptcy court improperly placed the burden on them to support their request for more money. Motel Owners also argue that the bankruptcy court disregarded both that Associated's internal records showed that the Contents were brand new and valued at $175,000 during Associated's 2019 inspection of the Motel, and that "[t]he record is . . . uncontroverted that the contents were a total loss."

Motel Owners' argument overlooks that it is the insured's burden to prove they suffered a loss and that the loss is covered by the Policy. *Seger*, 503 S.W.3d at 400; *Data Specialties*, 125 F.3d at 911; *Dall. Nat'l Ins. Co.*, 458 S.W.3d at 222. Motel Owners did not satisfy that burden because they did

not provide the required documentation to show that Associated owed them more than $10,000 for the Contents.

The 2019 valuation of the Contents does not help Motel Owners' argument. Contents are paid through the Policy on an ACV-, not RCV-, basis. ACV is measured by the "actual cash value as of the time of loss or damage." The valuation in 2019 does not reflect the value of the Contents at the time of the loss or damage, which occurred in 2021, because it does not account for depreciation. Motel Owners also did not provide evidence that the Contents' value has remained the same since 2019.

Accordingly, Motel Owners' evidence does not create a genuine dispute of material fact as to whether Associated breached the Policy by underpaying for Contents.

**3.**

Associated paid Viva $26,349.81 for Business Interruption between February 17, 2021, to May 31, 2021. Motel Owners argue that they are entitled to at least an additional $73,650.19 to compensate them for the entire duration of the Motel's restoration from February 2021 to December 2022, when the Motel reopened. Motel Owners assert that this time frame is both reasonable and feasible.

The appellant's brief "must contain: . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." FED. R. APP. P. 28(a)(8)(A). "Questions posed for appellate review but inadequately briefed are considered abandoned." *Dardar v. Lafourche Realty Co.*, 985 F.2d 824, 831 (5th Cir. 1993); *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994). When a party inadequately briefs an issue, this court need not review the issue. *See Dardar*, 985 F.2d at 831.

No. 24-10338

Motel Owners' argument cites neither the record nor case law. In fact, Motel Owners' argument that Associated should pay them for Business Interruption from February 2021 to December 2022 is based solely on what is allegedly reasonable or feasible, rather than on the text of the Policy, which does not define the duration of time for Business Interruption based on what is reasonable or feasible. Because Motel Owners failed to adequately brief their argument that the bankruptcy court, and district court, erred in granting Associated summary judgment as to coverage for Business Interruption, they have abandoned that argument. *Dardar*, 985 F.2d at 831; *Cinel*, 15 F.3d at 1345.

**B.**

Motel Owners raised the extra-contractual claims of (1) common law bad faith; (2) statutory bad faith under the Deceptive Trade Practices Act, TEX. BUS. & COM. CODE § 17.41 *et seq.* (the DTPA), and Chapter 541 of the Texas Insurance Code; and (3) statutory bad faith under Chapters 542 and 542A of the Texas Insurance Code. The bankruptcy court granted Associated summary judgment on the common law and statutory bad faith claims, finding that Viva did not assert "that it endured an injury independent of its contractual claims."

Motel Owners first argue that the district court summarily dismissed their statutory and tort claims without authority to do so because Associated did not raise an argument to dismiss those claims in its motion for summary judgment.

This argument is unsupported by the record. Associated did in fact argue that it was entitled to summary judgment on Motel Owners' common law and statutory bad faith claims in its motion for summary judgment filed in the bankruptcy court. The district court adopted the bankruptcy court's

report and recommendation, which disposed of the common law and statutory bad faith claims.

Motel Owners also argue that a claim of bad faith under Chapter 541 of the Texas Insurance Code is a separate cause of action from a breach of contract claim. While this is a true statement of law, it does not paint a complete picture.

Under Texas law, "[a]n insured's claim for breach of an insurance contract is 'distinct' and 'independent' from claims that the insurer violated its extra-contractual common-law and statutory duties." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489 (Tex. 2018). However, when an insured seeks to recover policy benefits as damages for an insurer's statutory or common law violation and "the issue of coverage is resolved in the insurer's favor, extra-contractual claims," such as claims for violating the DTPA, Sections 541 and 542 of the Texas Insurance Code, and the common law duty of good faith and fair dealing, "do not survive." *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010); *Hamilton Props.*, 643 F. App'x at 442; *see also Tchakarov*, 2021 WL 4942193, at *7 ("This principle applies to alleged violations of the Texas Insurance Code, the DTPA, and the common law duty of good faith and fair dealing."). This general rule follows from the principle that "[i]f the insurer violates a statutory provision [or common law duty of good faith], that violation—at least generally—cannot cause damages in the form of policy benefits that the insured has no right to receive under the policy." *Menchaca*, 545 S.W.3d at 492–93 (footnote omitted).

There is one exception to this general rule when an insurer commits an act so extreme that it causes an injury independent of the policy claim. *Id.* at 499. This exception applies "only if the damages are truly independent of the insured's right to receive policy benefits" and the extra-contractual claims "are [not] predicated on [the loss] being covered under the insurance

policy." *Id.* at 499–500 (second alteration in original) (quoting *Progressive Cnty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 920 (Tex. 2005) (per curiam)).

Motel Owners assert that Associated's alleged "delays in adjustment and payment in addition to its unjustified rejection of several components of Appellants' claim" clearly show bad faith. But Motel Owners fail to cite case law or argue that these actions are so extreme as to make the injury independent of the policy claim. For this reason alone, Motel Owners' argument fails. *Dardar*, 985 F.2d at 831; *Cinel*, 15 F.3d at 1345. Moreover, in addition to seeking compensatory damages in the form of policy benefits, Motel Owners seek exemplary and treble damages for the statutory claims and punitive damages for the common law claim. For the reasons explained in Part III.A *supra*, Motel Owners do not have a right to receive additional benefits under the Policy. Therefore, Motel Owners are not entitled to recover damages in the form of policy benefits for their statutory and common law claims, and their extra-contractual claims do not survive. *Menchaca*, 545 S.W.3d at 499–500.

## C.

In their amended complaint, Motel Owners seek reformation of the Policy to include New York Inn as an additional insured for all purposes, retroactive to August 2020. Viva is the named insured on the Policy, but before the storm, one of Viva's representatives asked to include New York Inn as an additional insured on the Policy. Associated added New York Inn as an additional insured but only with respect to general liability.

Under Texas law, "reformation requires two elements: (1) an original agreement and (2) a mutual mistake, made *after* the original agreement, in reducing the original agreement to writing." *Cherokee Water Co. v. Forderhause*, 741 S.W.2d 377, 379 (Tex. 1987). A court can reform a contract if the party seeking reformation proves that the parties to the contract made

a mutual mistake, and as a result, "the written contract fails to express the agreement." *Howard v. INA Cnty. Mut. Ins. Co.*, 933 S.W.2d 212, 219 (Tex. App.—Dallas 1996, writ denied); *see Nat'l Resort Cmtys. v. Cain*, 526 S.W.2d 510, 513–14 (Tex. 1975); *see also Donias v. Old Am. Cnty. Mut. Fire Ins. Co.*, 649 S.W.3d 789, 794 (Tex. App.—El Paso 2022, no pet.) ("The party seeking reformation must plead mutual mistake before being entitled to reformation."). Alternatively, for unilateral mistake, courts can reform a contract if the party that mistakenly entered into the contract "shows that its mistake is so great that enforcing the contract would be unconscionable, the mistake is material, the mistake would have been made regardless of the mistaken party's exercise of ordinary care, and the circumstances are such that the parties can be returned to the status quo." *Fort Apache Energy, Inc. v. Hous. Energy, L.P.*, No. 09-14-00007-CV, 2015 WL 5042133, at *8 (Tex. App.—Beaumont Aug. 27, 2015, no pet.). "Unilateral mistake by one party, and knowledge of that mistake by the other party, is equivalent to mutual mistake." *Davis v. Grammer*, 750 S.W.2d 766, 768 (Tex. 1988); *Holley v. Grigg*, 65 S.W.3d 289, 295 (Tex. App.—Eastland 2001, no pet.).

Motel Owners assert both (1) mutual and (2) unilateral mistake. Motel Owners point to an email exchange between a representative for Viva and Associated. In the email, the Viva representative asked to "add New York Inn as an additional insured on," and then the email is cut off by a rectangle with notes on it. The notes, from an Associated representative, provide that "the bank wants to see this name, New York Inn[,] as an additional insured on the Policy." Motel Owners also assert that Associated was aware of their desire to add New York Inn as an additional insured to the entire Policy because Associated knew New York Inn owned the Motel. The only other evidence that Motel Owners cite is their amended complaint. Associated, for its part, denies that it made a mistake.

**1.**

Motel Owners assert that Associated made a mistake by limiting New York Inn's coverage to general liability, and Motel Owners made a mistake when they signed off on the Policy.

Motel Owners are not entitled to reformation by mutual mistake. "A mutual mistake is one common to all parties, wherein each labors under the same misconception respecting a material fact, the terms of the agreement, or the provisions of a written instrument designed to embody such an agreement." *Hardy v. Bennefield*, 368 S.W.3d 643, 650 (Tex. App.—Tyler 2012, no pet.). The party seeking to prove mutual mistake "must provide summary judgment evidence that the parties 'reached a definite and explicit agreement understood in the same sense by both.'" *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 761–62 (5th Cir. 2002) (quoting *Zurich Ins. Co. v. Bass,* 443 S.W.2d 371, 374 (Tex. Civ. App.—Dallas 1969, no writ)); *Estes v. Republic Nat'l Bank of Dall.*, 462 S.W.2d 273, 275 (Tex. 1970) (the evidence must be "clear, exact, and satisfactory" (quotations omitted)); *Hardy*, 368 S.W.3d at 650.

The email creates a genuine dispute of material fact as to whether Viva understood its representative's request to add New York Inn as an additional insured to the Policy to mean adding New York Inn to the *entire* Policy. *TIG*, 276 F.3d at 762 (testimony that Policy 362, which did not include "an additional insured clause," but contained otherwise identical language to another policy that included "an additional insured clause," created a genuine dispute of material fact that the issuer of Policy 362 intended it to include "an additional insured clause"). However, the email does not show that Associated shared that understanding. At most, the notes indicate Associated's interpretation of Viva's request—to add New York Inn as an additional insured to the Policy—not Associated's agreement with that

request. *Id.* ("Although TIG presented evidence of Sedgwick's mistaken beliefs about the contract, TIG did not provide a shred of evidence that Lumbermens shared those beliefs."). For the same reasons, Associated's knowledge of New York Inn's ownership of the Motel does not show that Associated agreed to add New York Inn as an additional insured to the entire Policy.

**2.**

For unilateral mistake, Motel Owners argue that Associated erred by adding New York Inn only for general liability because Associated knew New York Inn owned the Motel and that Motel Owners requested that New York Inn be included in the Policy as an additional insured without limitation, as allegedly shown by Associated's internal records.[10]

The bankruptcy court acknowledged the email evidence and evidence of ownership but concluded that the evidence did not "demonstrate any fact indicating that [Associated] knew that Viva . . . wished New York Inn to be listed as an additional insured on each coverage under the Policy, nor could these exhibits conceivably be used as evidence of fraud on behalf of [Associated] without first showing such knowledge."

Motel Owners are not entitled to reformation by unilateral mistake. Although the emails show that Viva requested New York Inn to be added as an additional insured to *the Policy*, that does not necessarily mean that Associated knew that Viva wanted New York Inn added to the *entire* Policy. *See Oldaker v. Travelers Ins. Co.*, 497 S.W.2d 402, 403–05 (Tex. Civ. App.—

---

[10] Motel Owners lump their arguments regarding reformation and declaratory judgment together. The bankruptcy court dismissed the declaratory judgment cause of action in the order where it dismissed New York Inn as a plaintiff, not in its report and recommendation for summary judgment (where it effectively disposed of the reformation claim). We address the motion to dismiss in Part II *supra*.

El Paso 1973, no writ) (driver requested that an insurance policy exclude uninsured motorist coverage for a Pontiac then switched coverage to a different car and asked for the car to get "full coverage," thinking it included uninsured motorist coverage, but it did not; the court did not find the evidence sufficient for reformation by unilateral mistake). The same goes for the ownership evidence; just because Associated may have been aware of New York Inn's ownership of the Motel did not mean that they knew Viva sought to add New York Inn as an additional insured to the entire Policy.

## IV.

For the foregoing reasons, we AFFIRM the district court's grant of Associated's motion for summary judgment. We REMAND for the district court to rule on the outstanding appeals pending from the bankruptcy court's orders granting Associated's motion to dismiss and motion to deny attorneys' fees.